IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LEAZERA A. MAYLE, :

    Plaintiff, :

vs. : CA 15-00086-C

CAROLYN W. COLVIN, :
Acting Commissioner of Social Security,
 :
    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 17 & 18 ("In accordance with provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, and the Commissioner's brief,[1] it is determined that the Commissioner's decision denying benefits should be affirmed.[2]

---

[1] The parties were allowed to waive oral argument in this case. (Doc. 19; *compare id. with* Doc. 16.)

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 17 & 18 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to (Continued)

Plaintiff alleges disability due to fibromyalgia, asthma, carpal tunnel syndrome, migraines, pyelonephritis, depression with some anxiety, and personality disorder. The Administrative Law Judge (ALJ) made the following relevant findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since December 1, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: fibromyalgia, asthma, carpal tunnel syndrome, migraines, pyelonephritis, depression with some anxiety, and personality disorder. (20 CFR 404.1520(c) and 416.920(c)).
>
> . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> . . .
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift and carry no more than 20 pounds occasionally and 10 pounds frequently. The claimant can stand/walk for no more than 15-30 minutes at a time for up to 6 hours during an 8-hour workday, with changes in position at the intervals provided. The claimant can sit through the workday with regular breaks. The claimant can frequently handle, finger, feel, push/pull, and use hand tools. The claimant can occasionally climb stairs and ramps. The claimant can never climb ladders, ropes, or scaffolds. The claimant can never work around unprotected heights or dangerous equipment, temperature extremes, humidity and wetness, or be exposed to concentrated environmental pollutants such as dust, chemicals, or fumes. The claimant must have minimal changes in work settings and routine, and make judgment only on simple work related decisions. The claimant must avoid tasks

---

the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

**involving a variety of instructions or tasks, but [is] able to understand and carry out simple one or two step instructions, and [is] able to understand or carry out detailed but uninvolved written or oral instructions. The claimant cannot work in crowds, cannot have any more than occasional and superficial contact with the public. The claimant cannot have more than occasional interaction with coworkers and no activities requiring teamwork.**

. . .

She continues to seek treatment for her physical impairments. She sought treatment at the emergency department for headaches in May 2012, but departed in stable condition shortly after treatment was administered for her migraine headache. She had normal mood and affect, and [was] determined to be in no distress on examination. She returned days later for ongoing complaints of headaches and nausea secondary to her headache. She reported that emergency care had not improved her condition, which is contradicted by emergency department records that show her condition was stabilized before she was discharged. She was admitted for further observation of her reported headaches. Magnetic resonance imaging of the brain showed no significant abnormalities. Imaging of the chest was also performed and showed her lungs were clear and [her] heart [] within normal limits. The lumbar puncture performed was also negative. Her condition was noted as improved as of her discharge and [she was] provided medications to address her condition. She continues to seek treatment for her physical condition intermittently, but clinical findings of significant physical dysfunction have remained limited.  Her pulmonary deficits require treatment[,] as sought in September 2012, but radiological imaging showed no abnormalities. With treatment, she was examined and showed good air movement in the lung fields and appeared comfortable. Radiological imaging of the chest was normal. Physical examination with treatment revealed normal effort and breath sounds, with no respiratory distress. She sought treatment for migraine headache and pain of the arms, legs, back, and neck in October 2012. She reported intractable headache and severe issues with physical function. However, physical examination showed normal range of motion of the neck and musculoskeletal system. There were some sensory deficits in the right hand, but she demonstrated normal muscle tone and her coordination was normal. Motor examination showed full strength in both upper and lower extremities, and normal gait. The claimant's treatment records reveal persistent medical care sought, but also reveal limited clinical findings and diagnostic evidence inconsistent with the severity of physical dysfunction alleged. These ongoing medical findings continue to support restrictions to the light exertional range with further postural restrictions and environmental restrictions to accommodate her pain and respiratory issues, but fail to support the debilitating condition alleged.

She sought emergency treatment in October 2012 with complaints of abdominal pain. Radiological imaging was consistent with her prior

3

history of kidney issues, but her reported symptoms did not appear to be related to exacerbations in this condition, and she was discharged in stable condition. The computed tomography did not provide sufficient evidence of acute abnormality to determine the underlying cause of her complaints. . . . She sought treatment for generalized body aches in November 2012 as well as ongoing issues with her mental impairments causing disinterest in social activities. She continued to receive medication treatment, and [was] instructed to continue follow-up with mental health treatment at AltaPointe. However, corresponding AltaPointe records revealed limited compliance with the prescribed treatment including tolerance skills as prescribed. Despite her reported body aches, the objective findings remain[ed] limited. There was no pulmonary deficits noted and her oxygen saturation rate was 98%. There were no limitations in range of motion or abnormal exertional function noted on examination. She reported issues with concentration and confusion in December 2012 while driving, but the claimant has provided conflicting statements regarding driving. She reported in her function report that she does not drive because of her condition . . . and travels by riding in the car. However, she testified at the hearing that she has a driver's license and still drives. Despite the confusion reported, she was alert and without distress on examination. She has continued to receive medical care as needed, and reports persistent concerns that warrant restrictions in functioning. However, the evidence fails to support the severity of functional deficits alleged. The claimant continues to seek and receive treatment for her reported pain and pulmonary dysfunction, but medical sources have not determined her combination of impairments has warranted additional methods of treatment other then the intermittent injections provided.

Correspondence was provided in February 2013 assessing the claimant's physical and mental condition. While this source identified herself as a doctor, this document indicates her doctorate degree is in nursing practice, and is not an acceptable medical or psychological source. She reports having treated the claimant over the past eight months. She reports the claimant has experienced deterioration in mental status and continues to receive treatment for both her mental issues as well as physical problems causing pain that further exacerbates her mental condition. This source assesses the claimant is unable to perform work duties in any capacity and requires ongoing treatment at AltaPointe. The record does support the claimant's condition warrants ongoing mental health treatment. However, this opinion evidence from a treating non-medical source assesses the claimant's incapacity to perform work activity, an issue reserved to the Commissioner. Furthermore, this source identifies that she has provided treatment at Hands of Hope Healthcare Center. The[] corresponding records of treatment reflect some physical issues, but that the claimant receives mental health treatment elsewhere with acceptable mental health professionals at AltaPointe. These records do not support significant familiarity with the claimant's mental capacity to function, and do not reflect objective medical findings that would support the debilitating condition assessed. This non-medical treating

4

source opinion remains inconsistent with the record, which does not support the conclusion that she is unable to perform work duties in any capacity, and this is further contradicted by the clinical findings made by treating [] medical and psychological sources in the claimant's other records of treatment. This opinion evidence also fails to provide any assessment from a functional perspective as to what the claimant can or cannot do. Therefore, this opinion evidence was afforded little weight as inconsistent with the full record.

An assessment of the claimant's condition was performed by C. Scott Markle M.D., in March 2013. The claimant reportedly had been treated since March 2011 for carpal tunnel syndrome, migraine headaches, and fibromyalgia. She reportedly was limited by pain, and physical activity would greatly increase her symptoms and distract from tasks. She was assessed as unable to perform work activity on a full time basis, and reportedly has severe pain limiting her employment. Dr. Markle is suppo[sed] to constitute a treating medical source. However, his assessment of the claimant's functional limitations and incapacity to perform fulltime work activity remains inconsistent with his own treatment notes and other records indicating her response to treatment. Dr. Markle's own treatment notes found that she demonstrated normal muscle tone and coordination was normal. She also demonstrated full strength on motor examination for both upper and lower extremities. She demonstrated normal gait. Dr. Markle's findings in the months prior to this assessment are inconsistent with the assessment provided. Similar findings were reported in the scheduled visit days after this assessment was performed. The claimant continued to demonstrate minimal sensory deficit[s] in the right hand, but demonstrated normal muscle tone and normal coordination. Motor examination showed full strength in upper and lower extremities with normal gait, as found in previous treatment visits. Further records of treatment from Mobile Infirmary also fail to support the degree of dysfunction assessed by Dr. Markle in the March 2013 form. The record fails to substantiate the nature and severity of functional deficits assessed, and this treating medical source opinion evidence is afforded little weight as inconsistent with the full record.

. . .

In sum, the above residual functional capacity assessment is supported by the objective medical evidence including radiological imaging, laboratory testing results, diagnostic and clinical findings, and other evidence provided in treatment and examination records. The above residual functional capacity assessment is also supported by medical and psychological opinion evidence, without contradictory treating medical source opinion evidence that is supported by the objective medical evidence. Additional factors supporting the residual functional capacity assessment include the claimant's longitudinal treatment history, activities of daily living, and work history.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

. . .

7.     The claimant was born on September 6, 1968 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

. . .

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as follows:

| DOT Title | DOT Code | Numbers in Economy | SVP | Strength | Skill Level |
|---|---|---|---|---|---|
| Folder | 369.687-018 | 420,910 US; 16,320 AL | 2 | Light | Unskilled |
| Hand Packager | 559.687-074 | 236,450 US; 4,375 AL | 2 | Light | Unskilled |
| Inserting Machine Operator | 208.685-018 | 57,505 US; 485 AL | 2 | Light | Unskilled |

> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. The vocational expert identified that the number of jobs available in the economy as a hand packager and inserting machine operator were reduced by fifty percent to accommodate situations where they could not change positions. These adjustments from the Dictionary of Occupational Titles were based upon the vocational expert's experience over thirty years as well as familiarity with the positions identified. The testimony was accepted despite slight variance from the Dictionary of Occupational Titles, for the reasons identified.
>
> Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.
>
> **11.    The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 13, 14, 16-17, 23-25, 26 & 26-27 (internal citations omitted).)  The Appeals Council affirmed the ALJ's decision (Tr. 1-4) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Soc. Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[3] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v.*

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

7

*Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to h[er] past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

      The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform those light, unskilled jobs identified by the vocational expert at the administrative hearing, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to

the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Mayle asserts two reason why the Commissioner's decision to deny her benefits is in error (*i.e.*, not supported by substantial evidence): (1) the ALJ erred in failing to evaluate the opinion of her treating medical source, Cynthia Washington, DNP, under SSR 06-03p; and (2) the ALJ reversibly erred in failing to give controlling weight to the opinion of the plaintiff's treating neurologist, Dr. Scott Markle.

**A.    Opinion of Cynthia Washington, DNP, an "Other Medical Source"**. There can be no question but that Cynthia Washington, a nurse practitioner (*see* Doc. 11 (plaintiff's brief identifies Washington as a nurse practitioner))[5] at the Hands of Hope Health Care Center, penned an undated[6] "To whom it may concern" opinion letter relative to her treatment of plaintiff: "I have had the pleasure of caring for Mrs. Leazera Mayle over the past 8 months. Mrs. Mayle has experienced deterioration in mental

---

[4]    This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

[5]    Washington identifies herself as a doctor. (*See* Tr. 753.) She appears to have a doctorate in the Nurse Practitioner area. (*See id.*)

[6]    Although undated, the ALJ's opinion makes clear that this correspondence was received by the Social Security Administration in February of 2013. (Tr. 24.)

status, which has resulted in lack of interest in performing daily self-care skills, interest in social activities, as well as thoughts of not wanting to live. Mrs. Mayle is currently being treated for major depression and personality disorder at Altapointe Healthcare Center. In addition, Mrs. Mayle has fibromyalgia, which results in pain that aggravates her mental condition. Her physical and mental state has resulted in multiple hospitalizations over the past 2 years. Due to her mental status, she is not able to perform work duties in any capacity and requires ongoing care by the psychiatrist at Altapointe. If further information is needed, please feel free to contact me at the above address and/or office number." (Tr. 753.)

Nurse practitioners are excluded from the list of "acceptable medical sources" whose opinions are to be considered in determining the existence of an impairment. *See, e.g.,* 20 C.F.R. § 404.1513(a) (2015). However, medical sources who are not "acceptable medical sources" are considered "other sources" and their opinions and evidence may be used "to show the severity" of an impairment and "how it affects [the] ability to work[.]" *See* 20 C.F.R. § 404.1513(d) (nurse practitioners included in subsection (1)).

Social Security Ruling 06-03p clearly provides that the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d) can be applied to opinion evidence from medical sources who are not "acceptable medical sources," including the following factors: (1) how long the source has known the claimant and how frequently the source has seen the claimant; (2) how consistent the source's opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support the opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairments; and (6) any other factors that tend to support or refute the source's opinion. *Id*. The ruling goes on to explain that not every factor listed will apply in every case. *Id*. And, finally, the ruling explains that the "adjudicator

generally should explain the weight given to opinions from [] 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a . . . subsequent reviewer to follow the adjudicator's reasoning . . . ." *Id*.

With these principles in mind, the undersigned considers plaintiff's argument that the ALJ erred in failing to evaluate the opinion plaintiff's treating non-accepted medical source, Cynthia Washington, DNP, in accordance with SSR 06-03p. In particular, plaintiff avers that Washington's opinion, which is set forth above, is one she is qualified to give and is "supported by records showing that the Plaintiff has required in-patient treatment for suicidal ideation." (Doc. 11, at 3, citing Tr. 596-611 & 641-673.) The plaintiff is correct in noting that a non-accepted medical source like Washington may well occupy a position which would "qualif[y her] to give an opinion [showing] the severity" of plaintiff's mental impairment (Doc. 11, at 3); however, her suggestion that the ALJ did not give Washington's opinion "weight" (*see id.*), or otherwise properly evaluate her opinion in accordance with SSR 06-03p is simply incorrect. The Court finds that the ALJ properly afforded Washington's opinion "little weight[,]" and set forth several reasons for giving Washington's opinion little weight (Tr. 24).

> The record does support the claimant's condition warrants ongoing mental health treatment. However, this opinion evidence from a treating non-medical source assesses the claimant's incapacity to perform work activity, an issue reserved to the Commissioner. Furthermore, this source identifies that she has provided treatment at Hands of Hope Healthcare Center. The[] corresponding records of treatment reflect some physical issues, but that the claimant receives mental health treatment elsewhere with acceptable mental health professionals at AltaPointe. These records do not support significant familiarity with the claimant's mental capacity to function, and do not reflect objective medical findings that would support the debilitating condition assessed. This non-medical treating source opinion remains inconsistent with the record, which does not support the conclusion that she is unable to perform work duties in any capacity, and this is further contradicted by the clinical findings made by treating [] medical and psychological sources in the claimant's other records of treatment. This opinion evidence also fails to provide any assessment from a functional perspective as to what the claimant can or

11

>cannot do. Therefore, this opinion evidence was afforded little weight as inconsistent with the full record.

(*Id.* (internal citations omitted).) As reflected, the ALJ did accord "weight" to Washington's opinion, albeit "little," and certainly set forth several reasons for according Washington's opinion little weight, in accordance with SSR 06-03p. *See Montgomery v. Astrue,* 2013 WL 3152278, *8 (N.D. Ala. Jun. 18, 2013) ("Here, the ALJ does not address every factor [listed in SSR 06-03p] as pointed out by Plaintiff; however, the ALJ was not required to explicitly address every factor as long as the ALJ provides '"good cause" for rejecting a [nurse practitioner's] medical opinions.'"). In particular, the ALJ noted that Washington's opinion was "inconsistent with the record," (Tr. 24), which is an identified factor in SSR 06-03p.[7] Moreover, the ALJ correctly noted that Washington's treatment records focused primarily upon plaintiff's physical impairments and clearly reflect—even where mental symptomatology was reported and objective mental findings noted—that plaintiff was under the care of a psychiatrist at AltaPointe (Tr. 24), an implicit determination that Washington's opinion was due little weight because of a lack of expertise relative to plaintiff's mental impairment (*see id.* ("These records do not support significant familiarity with the claimant's mental capacity to function[.]"), *see* SSR 06-03p (factors). Finally, the ALJ correctly noted that the objective findings made by Washington (*see* Tr. 880 ("Flat affect with sad mood with disorganized thought process.") & 881 "Flat affect with tearing and emotional

---

[7] Importantly, the ALJ also observed that Washington's "opinion evidence . . . assesses the claimant's incapacity to perform work activity, an issue reserved to the Commissioner." (Tr. 24.) The ALJ's criticism of Washington's opinion in this regard, while perhaps not a specific "factor" listed in SSR 06-03p, is nevertheless appropriate. *Miles v. Social Security Administration,* 469 Fed.Appx. 743, 745 (11th Cir. Mar. 15, 2012) ("[A] medical source's statement that a claimant is 'unable to work' or 'disabled' does not bind the ALJ, who alone makes the ultimate determination as to disability under the regulations.").

instability; appropriate response to verbal command but with . . ."); *but cf.* Tr. 679 ("Positive [for] mental illness F/B psychiatrist, currently compliant with medical management plan; no H/O suicidal ideations or plans.") & 680 (same)), were not consistent with "the debilitating condition assessed[,]" (Tr. 24), that is, Washington's objective findings were inconsistent with her opinion that plaintiff cannot "perform work duties in any capacity" due to her mental status (Tr. 753). Thus, the ALJ did not err in affording Washington's conclusory letter opinion "little" weight. *Cf. Kennedy v. Colvin,* 2015 WL 1003845, *8 (N.D. Fla. Mar. 5, 2015) ("The ALJ gave 'little weight' to the opinions of Ms. Breland because he found them 'inconsistent with the other evidence in the record.' [] The ALJ also found that the 'treatment notes from Ms. Breland's clinic, the Washington County Health Department, fail[ed] to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant in fact were disabled.' [] The undersigned agrees that Ms. Breland's opinions were entitled to little weight. Not only are they inconsistent with and unsupported by other evidence in the record, but like Dr. Harmon-Sheffield's opinions, they also were conclusory and expressed on pre-printed check-off forms.").

    **B.**    <u>**Opinion of Treating Physician Dr. Scott Markle**</u>.  The law in this Circuit is clear that an ALJ "'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'" *Nyberg v. Commissioner of Social Security,* 179 Fed.Appx. 589, 590-591 (11th Cir. May 2, 2006) (unpublished), quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (other citations omitted). In other words, "the ALJ must give the opinion of the treating physician 'substantial or considerable weight unless "good cause" is shown to the contrary.'" *Williams v. Astrue,* 2014 WL 185258, *6 (N.D. Ala. Jan. 15, 2014), quoting *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004) (other citation omitted); *see*

*Nyberg, supra,* 179 Fed.Appx. at 591 (citing to same language from *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159 (11th Cir. 2004)).

> Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert v. Commissioner of Soc. Sec.*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) (per curiam). Most relevant to this case, an ALJ's articulation of reasons for rejecting a treating source's opinion regarding the extent of a plaintiff's pain and inability to engage in gainful employment must be supported by substantial evidence. *See id.* ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. In this case, therefore, the critical question is whether substantial evidence supports the ALJ's articulated reasons for rejecting Thebaud's RFC.") (citing *Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir. 2005)); *D'Andrea v. Commissioner of Social Security Admin.*, 389 Fed.Appx. 944, 947-948 (11th Cir. Jul. 28, 2010) (per curiam) (same).

In this case, the ALJ specifically determined that "little" weight was due to be afforded the assessment of Dr. Markle because that assessment was inconsistent with the objective evidence of record, including Markle's own treatment records. (Tr. 24-25.)

> An assessment of the claimant's condition was performed by C. Scott Markle M.D., in March 2013. The claimant reportedly had been treated since March 2011 for carpal tunnel syndrome, migraine headaches, and fibromyalgia. She reportedly was limited by pain, and physical activity would greatly increase her symptoms and distract from tasks. She was assessed as unable to perform work activity on a full time basis, and reportedly has severe pain limiting her employment. Dr. Markle is suppo[sed] to constitute a treating medical source. However, his

14

> assessment of the claimant's functional limitations and incapacity to perform fulltime work activity remains inconsistent with his own treatment notes and other records indicating her response to treatment. Dr. Markle's own treatment notes found that she demonstrated normal muscle tone and coordination was normal. She also demonstrated full strength on motor examination for both upper and lower extremities. She demonstrated normal gait. Dr. Markle's findings in the months prior to this assessment are inconsistent with the assessment provided. Similar findings were reported in the scheduled visit days after this assessment was performed. The claimant continued to demonstrate minimal sensory deficit[s] in the right hand, but demonstrated normal muscle tone and normal coordination. Motor examination showed full strength in upper and lower extremities with normal gait, as found in previous treatment visits. Further records of treatment from Mobile Infirmary also fail to support the degree of dysfunction assessed by Dr. Markle in the March 2013 form. The record fails to substantiate the nature and severity of functional deficits assessed, and this treating medical source opinion evidence is afforded little weight as inconsistent with the full record.

(*Id.*)

A review of the transcript reflects that plaintiff has been followed by Dr. Scott Markle for bilateral carpal tunnel syndrome, migraine headaches, and fibromyalgia since March of 2011. (*See* Tr. 455.) However, the Court need agree with the ALJ that Markle's own examination findings do not support his assessment that physical activity will greatly increase plaintiff's pain so as to cause distraction from task or total abandonment of task and that her pain limits her ability to engage in any and all forms of gainful employment on a repetitive, competitive and productive basis. (*See* Tr. 445 ("On exam, . . . [c]ranial nerves II-XII are intact. Motor exam shows good strength in both upper and lower extremities. Sensory exam shows bilateral positive Tinel's and a positive Phalen's. Sensory is otherwise intact. Reflexes are 2+ in the bilateral biceps, triceps, patellar, and ankles. Toes are downgoing. Romberg is negative. Gait is normal."); Tr. 455 ("There is no facial asymmetry. Facial sensation is intact. The palate is upgoing. The tongue is midline. Motor exam shows good strength in both upper and lower extremities both proximally and distally. Sensory exam is grossly intact. Reflexes

are 2+ in the bilateral biceps, triceps, patellar, and ankles. Toes are downgoing. Romberg is negative. Gait is normal. . . . I do not see any fasciculations or atrophy of the muscles."); Tr. 723-724 ("Neck: Normal range of motion. . . . Musculoskeletal: Normal range of motion. Neurological: She is alert and oriented to person, place, and time. She has normal reflexes. A sensory deficit (**Right hand in medial distribution**) is present. No cranial nerve deficit. She exhibits normal muscle tone. Coordination normal. **CNII-XII intact. Motor exam shows 5/5 strength in both upper and lower extremities. Romberg negative. Normal gait[.] No ataxia on finger nose finger or heel to shin. Babinski normal bilateral[.]**" (emphasis in original)); Tr. 918 (same). In addition, the relevant additional evidence of record does not support Dr. Markle's assessment findings. (*See, e.g.,* Tr. 464 (normal range of neck and musculoskeletal normal range of motion); 489 (musculoskeletal stable); 500 ("Musculoskeletal: Negative. Negative for myalgias and arthralgias. . . . Neurological: . . . Negative for dizziness, tremors, seizures, syncope, facial asymmetry, speech difficulty, weakness, light-headedness and numbness."); 525 ("EXTREMITIES: No clubbing, cyanosis or edema. +2 pulses upper and lower extremities."); 529 ("Neurologic—5/5 strength bilateral upper and lower extremities."); 545 ("Musculoskeletal: Negative for back pain and joint swelling."); 584 (description of back pain as mild, 2/10); 586 ("Musculoskeletal: Normal range of motion. She exhibits no edema and no tenderness. . . . Neurological: . . . She displays normal reflexes. No cranial nerve deficit. She exhibits normal muscle tone. Coordination normal."); 590 (same); 593 ("**Extremities:** Intact distal pulses, No edema, No tenderness, No cyanosis, No clubbing. **Musculoskeletal:** Good range of motion in all major joints. No tenderness to palpation or major deformities noted. **Neurologic:** Alert & oriented x 3, Normal motor function, Normal sensory function, No focal deficits noted."); 625 ("Musculoskeletal: Negative. Negative for myalgias, back pain and arthralgias."); 627

("Musculoskeletal: Normal range of motion. She exhibits no edema and no tenderness."); 660 ("Musculoskeletal: . . . Negative for back pain and arthralgias."); 661 ("Musculoskeletal: Normal range of motion. She exhibits no edema and no tenderness."); 687 ("Musculoskeletal: Negative for back pain, joint swelling, arthralgias and gait problem. . . . Neurological: Negative for dizziness, weakness and headaches."); 688 ("Musculoskeletal: Normal range of motion. She exhibits no edema and no tenderness. . . . Neurological: . . . She has normal reflexes. No cranial nerve deficit. She exhibits normal muscle tone. Coordination normal."); 698 ("Musculoskeletal: Negative for joint swelling, arthralgias and gait problem."); 699 ("Musculoskeletal: Normal range of motion. She exhibits no edema and no tenderness. . . . Neurological: . . . She has normal reflexes. No cranial nerve deficit. Coordination normal."); 708 ("Musculoskeletal: Negative for myalgias, back pain and arthralgias."); 709 ("Musculoskeletal: Normal range of motion. She exhibits no edema and no tenderness."); 741 ("Musculoskeletal: She exhibits no edema. . . . Neurological: No cranial nerve deficit. Coordination normal."); 909 ("Musculoskeletal: Negative for back pain and joint swelling."); 910 ("Musculoskeletal: She exhibits no edema. Neurological: No cranial nerve deficit. Coordination normal."); 914-915 ("EXTREMITIES: No clubbing, cyanosis or edema. . . . NEUROLOGIC: Intact.").) Accordingly, the ALJ did not err in according "little" weight to Markle's assessment as it is inconsistent with the objective medical evidence, including Markle's own examination findings.

  In light of the foregoing and because substantial evidence of record supports the Commissioner's determination that Mayle can perform the physical and mental requirements of a reduced range of light work as identified by the ALJ (*see* Tr. 16-17; *compare id. with* Tr. 445-575, 584-595, 622-673, 682-749, 758-851 & 893-918), and plaintiff makes no argument that this residual functional capacity would preclude her

17

performance of the light jobs identified by the VE during the administrative hearing (*compare* Doc. 11 *with* Tr. 249-252), the Commissioner's fifth-step determination is due to be affirmed. *See, e.g., Owens v. Commissioner of Social Security,* 508 Fed.Appx. 881, 883 (11th Cir. Jan. 28, 2013) ("The final step asks whether there are significant numbers of jobs in the national economy that the claimant can perform, given h[er] RFC, age, education, and work experience. The Commissioner bears the burden at step five to show the existence of such jobs . . . [and one] avenue[] by which the ALJ may determine [that] a claimant has the ability to adjust to other work in the national economy . . . [is] by the use of a VE[.]"(internal citations omitted)); *Land v. Commissioner of Social Security,* 494 Fed.Appx. 47, 50 (11th Cir. Oct. 26, 2012) ("At step five . . . 'the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.' The ALJ may rely solely on the testimony of a VE to meet this burden." (internal citations omitted)).

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 25th day of November 2015.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**